Casey, Ch. J.,
delivered the opinion of the court:
This case has been referred to this court by ajoint resolution of Congress, approved June 3,1864, and jurisdiction was thereby conferred upon us u to investigate and determine—
“ First. Is William Wheeler Hubbell the original inventor of the shell and fuse and percussion device aforesaid, or either of them, and has he a just and equitable right to compensation for the same ? and
“ Second. What amount of compensation is he entitled to receive for the use of his inventions and patents, as claimed, up to the time of the adjudication, and for a full and entire transfer of his patents to the United States 1”
Ey a subsequent proviso the sum which the court is authorized to award and adjudge is limited to one hundred thousand dollars, and payment of such sum as this court shall award “ shall vest the full and absolute right to said patents in the United States.”
In pursuance of this joint resolution, the claimant filed his petition in this court. The United States have defended the case upon the ground that the claimant, Hubbell, was not the first and original inventor of the shell, the fuse, and the percussion device, or either of them, and that he is therefore not *20 entitled to any part of the sum we are authorized to adjudge. The case has been prepared and presented with great care and elaboration on both sides. On the part of the claimant, by his own extensive scientific, mechanical, and legal knowledge, aided by eminent counsel, the case has been developed, in its facts and theory, with great fullness and completeness of analysis, description, and detail; while on the part of the defendants, the exhaustive and skillful labors and arguments of the Assistant Attorney General, and the special counsel for the United States, have greatly lightened our labors and assisted us in reaching the conclusions we have arrived at.
The claim made is for compensation for the use of three separate and distinct inventions, of which the claimant alleges he was the first and original inventor, respectively, and that they are severally not only new, but useful, practical devices.
The first claim is for an externally spherical, explosive shell. And for this shell the plaintiff claims the combined results as a unit of greatest accuracy, greatest range, greatest power of blast, and greatest strength. These results he alleges he attains by combining a flat-based internal segment of preponderance or compensation, uniform or concentric with the axis of the fuse or fuse-hole, a smooth, spherical external surface of shell, a heavy brass fuse, and a sabot of wood to control the entrance, position in and exit of the shell from the gun. This shell the claimant caused to be patented on the 22d day of January, 1856, and on the 19th of January, 1858, had it reissued to embrace some improvements made after the date of the first patent, and to correct some errors or inaccuracies. In the schedule or description annexed to that patent, he states the object sought thereby to be accomplished as follows:
“ The nature of my invention consists in arranging a given weight of metal for a spherical shell of any size to fire from cannon or shell guns, in such manner that the greatest amount of vis inertia} is obtained to keep or retain the fuse-hole in front, in the flight of the shell, with the least proportionate displacement of the powder space in the interior of the shell, by combining with and uniformly around the fuse-hole the flat-based segment of a solid sphere, and with and behind this the segment of a hollow sphere, forming externally a smooth spherical surface, and internally the eccentric form with flat base around the fuse-hole.”
*21 Tbe second claim is for tbe use of a time and impact fuse, and is covered by tbe claimant’s patent of January 7, 1862. Tbis latter patent embraces also a shell or projectile in connection with tbe fuse, but no claim is made in respect of it in tbis case..
He describes, generally, tbe invention as follows :
“First. In constructing an expanding fire chamber around' tbe mouth of tbe burning column of tbe fuse, with a flat base- and direct or quick-acting vent, to expand and bold tbe fire tO' explode tbe .shell, notwithstanding- tbe entrance of water.
“ Second. In tbe construction and manner of application of an improved device to explode tbe projectile on percussion after firing it from a gun, as well as on time.
“Third. In tbe construction and manner of application of an improved device to explode tbe projectile on concussion, after firing it from tbe gun.
“ Fourth. In tbe construction and manner of application of an improved device to explode the projectile on impact after firing it from the gun.
“ Fifth. In tbe construction and manner of application of an improved device to explode tbe projectile at any instant of time, and any place or position, after firing it from tbe gun.
“Sixth. In tbe construction and manner of applying these improved devices together in one projectile, so as to develop their respective properties, as exigencies may require in an action, in tbe same projectile.”
After a special and minute description, with full reference to tbe plates and drawings, be says:
“Havingnow fully described my invention, and tbe manner of making and using it, what I claim is—
“First. I claim tbe vent‘15,’ opposite and nearly or quite at right angles to tbe base of tbe chamber ‘ 4,’ to receive and discharge tbe fire as quick as possible, and deliver tbe water direct on tbe base of the chamber to diffuse it in tbe best manner, as described.
“ Second. Also I claim expanding tbe fire in au enlarged chamber around the mouth of tbe burning columns, so as to secure a large body of fire to insure tbe explosion of tbe shell as described.
“ Third. I also claim combining tbe percussion exploder with tbe burning fuse, by securing tbe cylinder ‘ F ’ to the inner end of tbe fuse stock, and providing it with a head for the striker, *22 inside of the cylinder, sons to unite the percussion and the fuse principles for explosion, as described.
“ Fourth. I also claim the lead stopper b*,’ inserted in and secured to the inner end of the fuse stock, by screw-threads or similar means, as and. for the purpose described; and also forming the chamber or space 1V between this stopper and the burning column,.as described.
“Fifth. I also.claim the chamber ‘q? and its opening‘p’ between the liead.M and the fuse column, as described.
“ Sixth, I also claim the lead or metallic stopper ‘Z Z’ in the metal base or groove covering the holes 1 and releasing on concussion to explode the projectile, .as described.
“ Seventh. I claim the fire-chambered water capping combined with the cylindrical fuse opening or stock, carrying the. burning column with cylinder opening at the inner end to hold the fire and explode the shell on impact, as described.
“Eighth. I claim the adjustable, metallic timing rod (W) in the burning column, or near its side, to adjust the fuse to explode the projectile at any instant of time, as described. Also, I claim the strand of quick match Hi’ in its lower end to raise and lead the fire down on time, as described.
“Ninth. I claim the fire chamber ‘Í’ in the capping between the water table or plate ‘ 2/ and the capping vent, formed by combining them to .prevent extinguishment of the fuse, as described. Also, I claim the raised ventc 3 ’ of the water table into the chamber, as described, to increase its capacity to exclude water. Also, I claim the chamber (1) between the vent 13 ’ and the orifice of the column ‘ vj as described.
“Tenth. I claim forming an enlarged or priming chamber ‘ 7 ’ around or by the side of the timing rod, to insure an ignition of the fuse by presenting a large priming surface for the smaller vent, and allow the timing rod to extend through the capping and be adjusted, without interfering with the priming, as described.
“Eleventh. I claim the file cuts or fracturing points on the side of the timing rod, so as to break it off without the use of an instrument, in adjusting the time in action, as described. And I also claim the quick or double three or four threaded screw on the timing rod, to adjust it quickly, as described.”
The third claim of the plaintiff is for a percussion fuse, as described in his patent dated January 24, 1860.
*23 The elements of the invention, according- to Mr. Burr, examined as an expert, are:
“First. A metallic ‘ striker ’or plunger, traversing within an inclosing cylinder, said striker carrying fulminate upon its front end, communicating by a suitable aperture with a chamber or magazine formed within the same, and opening outwardly at the rear thereof, and striking against a projection or tube placed at the front end of the inclosing cylinder, open spaces being left along its length, between its sides and the inner surface of the cylinder.
“ In the second place, in providing suitable eommunicating apertures between that portion of the inclosing cylinder at the rear end of the striker and the surrounding powder space within the shell.
“ Third. In the use of screws of soft metal, to secure the striker in the rear end of its inclosing cylinder, so that the striker may be released by means of its inertia when the projectile is fired from the gun, or in the use of a plug fitting into the rear end of the striker, and also into' the rear end of thé inclosing cylinder, for the same purpose.
“ Fourth. In the combination of an inelastic seat with the rear end of the inclosing cylinder, to receive the striker as it recedes, when the projectile starts, to prevent a rebound thereof.”
The claims in this patent which relate to the fuse are the sixth, seventh, eighth, ninth, tenth, eleventh, and fourteenth, and are as follows: ,
“ Sixth. I claim the extension of the carrying cylinder r r, to the back part of the projectile, in combination with the metallic striker *, the spaces 4, 4,4, 4, Fig. 8, and the rear side orifices v, so as to allow the projectile time to penetrate and the striker to effect its explosion.
“ Seventh. The flat sides or open spaces 4, 4, 4, 4, Fig. 8, between the striker and the cylinder, to allow the air to pass through from rear to front and front to rear of the striker to facilitate its effective action in the cylinder.
“Eighth. The seat of lead u, at the base of the cylinder, to receive the striker as it recedes to the back part of the cylinder, and by its non-elastic nature prevent a reaction of the striker in the cylinder when the projectile starts in the gun.
“ Ninth. I claim the fulminate in the front end of the striker in combination with the cylinder, the tube to, the chamber y, *24 and the spaces 4, 4, 4, 4, Fig. 8, so as to carry ¿he fulminate in tbe gun, and cause it to explode the shell with a certainty and ease, on penetration, as described.
“ Tenth. The combination of the firing vents v, v, in the rear of the cylinder, with the magazine of powder y, in the striker, so that the striker when it explodes the fulminate in the front of the cylinder shall discharge a body of fire back, in the cylinder and through these firing vents, to explode the shell after a sufficient time has elapsed to allow it to penetrate.
u Eleventh. I claim the wooden cylinder seat 8, in combination with the cylinder and striker, to steady the cylinder and receive the striker when starting in the gun; and also I claim the auxiliary magazine of powder t in the cylinder seat, in combination with the striker, to facilitate the firing of the contents of the shell through the vents v v.
“ Fourteenth. I claim the combination of the two opposite lead screws 2, 2, with the cylinder and the striker, forward-of the center of gravity of the striker, so as to secure and release and allow the striker to operate without impinging on the cylinder as it is released, and without obstruction from the severed metal as it plunges forward, as described.”
These claims are denied on the part of the United States. They insist that Hubbell is not the first and original inventor of the shell as'claimed, or of either the time and impact fuse ox the percussion device; or that, if he was the original inventor of any of the arrangements or devices claimed in any of his patents, that they were not new and useful devices and inventions, reduced by him to a practical end and purpose, and introduced into public use.
1st. They allege that the combination of the segment of the solid sphere with flat base uniformly around the fuse-hole will not accomplish the object proposed by Mr. Hubbell in his invention and patent, which was to obtain such vis inertia} for that part of the shell as to retain the fuse-hole in front in the flight of the shell through the atmosphere.
2d. It is contended that if it would accomplish and attain the object proposed by the claimant, any other re-enforcement in that part of the shell, in any other form, shape, or manner, which would increase the preponderance of the weight of that part of the sphere, would produce the same result as the particular flat-based segment of Hubbell; and that various forms of re- *25 enforcement of such shells bad been nsed and known prior to the date of the claimant’s invention.
3d. They also allege that eccentric shells with flat-based segments were described and published in two several works long prior to the date when Hubbell claims to have made his invention and discovery. And they present a description and drawing of such a shell from a work by Louis de Toussard, published at Philadelphia iu 1809, entitled “The American Ar-tillerist’s Companionand also from a French book entitled “Nouvelle Force Maritime,” by H. J. Paixhans, published at Paris in 1822. The re-enforcement by a flat-based segment in these cases is opposite instead of at the fuse-hole.
So in regard to both the time and percussion fuses. The United States deny that Hubbell was the original inventor of the same, as claimed in his respective patents. They have presented many reports and voluminous evidence to show that the elements, arrangements, and combinations of the fuses as claimed by him were known, applied, and used before the date of his invention.
The evidence on these transactions covers a period of a quarter of a century, and embraces nearly the whole range of experiment and improvement of that period in ordnance and projectiles. This is contained in about sixhundred closely printed octavo pages of proofs, besides numerous drawings, together with many exhibits of shells and fuses, in the different stages of improvements of that period, both of those made by the claimant and other experimenters and inventors. Any statement or condensation of the evidence within any reasonable limits of an opinion is therefore impracticable. After a long, patient, full examination and comparison of the evidence on the one side and the other, we can only state the conclusions, or ultimate facts, at which we have arrived. And these are:
1. That Hubbell is not the first and original inventor of the flat-based re-enforced shell, as claimed by him in his patent dated January 22,1856, and reissued January 19,1858. Nor will said device and invention accomplish the objects and purposes designated in said patents. And the irse of the shell in question by the United States was no injury to the claimant or any infringement of his patents.
2. We further find that Hubbell was the first and original inventor of the time and impact fuse, as claimed by him in his *26 patent, of January 7,1862. And that such fuse has been largely and extensively used by the United States, in violation of his rights as patentee. And that he is justly and equitably entitled to compensation therefor, under the joint resolution of Congress before recited.
3. Wo further find that Hubbell, the claimant, is the first and original inventor of the percussion fuse, as claimed in his patent of January 24, 1860. It is proved that these fuses have been used in great numbers by the United States, in derogation of claimant’s rights secured by his patents.
We cannot doubt, after examining the proofs contained in this record, that shells with flat-based segments were known and used long before the claimant’s alleged invention. They had been accurately and fully described in published works in this and foreign countries. Whether re-enforcements in that form had been made and used immediately around the fuse-hole, as in claimant’s patent, is in our judgment immaterial in this case — re-enforcements to give preponderance of weight to a particular part of the shell. Other forms of increasing the thickness of the shell around the fuse-hole, to give bearing to the fuse and increase the strength of the shell, were also well known, and had been made in various shapes and forms before the claimant’s invention. But if the fact were otherwise, it would not avail the claimant. The invention must not only be new but useful. And it must accomplish by the means prescribed the proposed object and purpose. Tested by this standard, the claimant wholly fails on this branch of his ease.
The declared object of this re-enforcement and increase of weight at the fuse-hole, is to prevent the rotation of the shell as it passes through the air when fired from a gun, and therefore to cause it to strike the object against which it may be directed fuse foremost. Now all the evidence offered satisfies us beyond all reasonable doubt, that these appliances do not prevent the rotary motion of spherical shells when fired from smooth-bore ordnance. And the point of impact of the shell with the object fired at must be purely accidental. And this is none the less so than if such re-enforcement were entirely wanting. That such re-enforcement may secure greater range and accuracy of flight to the shell is not to the purpose; for, in the first place, this was not the proposed and declared object and purpose of the invention; and, in the second place, any *27 other form of re-enforcement, or increase of tbe weight, either at that or any other part of the shell, would produce the same effect as that proposed by claimant ,• and, in the third place, such re-enforcement, and with this view, had been made and used and described long before the date of the claimant’s invention.
And on this branch of the claim, we find that the claimant was not the original inventor of the shell, and is not entitled to receive any compensation for its use by the United States. And as to so much of claimant’s petition as claims compensation for the use of such shell, we find for the defendants and dismiss the petition.
In regard to the claim made for the use of the time and percussion fuses, wo have arrived at the ultimate facts already announced. There is an immense mass of testimony upon the one side and the other. Some of it is vague and general, and much less precise, definite, and satisfactory than we could wish. Much of it is conflicting, and some of it irreconcilable with other proofs in the case. Nor do the witnesses alone differ as to the facts, but are equally at variance in the opinions expressed in regard to the many devices and inventions that have come under review. Experts called upon each side, and claiming full and accurate scientific and practical knowledge of the subjects, reach diametrically opposite conclusions. Eival claimants have attempted to uphold their own inventions and to depreciate all others. The failure of the memory of some of the living witnesses — the death of others — in the thirty years covered by the history and progress of these inventions, have all combined and tended to make the investigation a tedious and a difficult one.
Inventions like those in suit are peculiarly affected by the causes named, and by a variety of other considerations. It was not one that was to come into genéral use, but to be used by governments alone. To bring the invention to anything like perfection, required repeated trials and experiments. The government alone possessed the necessary means and facilities for making such trials. Such tests had to be made in some degree in a public manner, or at least in the presence and under the direction and control of the officers of the government. It was a time, too, when private and professional talent and genius were directed very earnestly to improved ordnance and *28 projectiles. And in that period, the whole system of modern warfare has been recast and revolutionized by improved and more deadly implements of destruction; and especially by the invention and general introduction of rifled cannon with spiral grooves, and the substitution of elongated or conical projectiles for the spherical balls and shells theretofore used.
Through this confused and incongruous mass of proofs, written and oral, and the obscure and dim history they afford of the rise, progress, and perfection of the inventions under consideration, we have been compelled to reach our conclusions. Where so many minds have been directed to the attainment of the same object, it is often difficult to ascertain with certainty who is entitled to the credit of the perfected and completed invention.
It would seem but natural that in inventions like those under consideration, where their final success depends upon complex arrangements, combinations, and adaptations, that some of the same ideas and elements should occur to different persons. Such was doubtless the case in regard to these fuses. For years private parties, as well as various officers of the army and navy, had been directing their thoughts and inventive powers to the production of a fuse that should be both certain and exact in the explosion of shells. Among these, as the evidence demonstrates, there was no more intelligent, scientific, and persistent worker than the claimant. It is fully sustained by the evidence that he has contributed in an important degree, by his inventions, to the present improved and efficient projectiles in use in our army and navy. That, in his intercourse with officers of the army and navy, in the early trials and experiments made upon his inventions, Mr. Hubbell may have received very important information and suggestions in regard to his fuses, is doubtless true; and that he availed himself of some of these suggestions in completing and perfecting his inventions, will in no wise impair his rights as an original inventor. Nor will the fact that others, either before or about the time of his invention, made trials and experiments of some of the elements, devices, and arrangements of his inventions, invalidate his patent or defeat his right to compensation under the joint resolution. If he was the first, as we believe him to be, to combine and arrange the various elements and devices that constitute the fuses used by the United States, so as to *29 make tbem a practical, efficient, and complete invention, and to so delineate and describe tbeir parts, combination, and construction as to enable others to make, apply, and use them, and such device is useful and accomplishes the purpose proposed, he is entitled to recover. And upon a full and careful review of all the proofs, a majority of the court is satisfied that the claimant fairly brings himself within these principles, so far as the time and percussion fuses are concerned. The papers and specifications made out, witnessed, and sworn to by the claimant in 1842 and 1843, describing some of the main features of his inventions, the trials and experiments made in the latter year, and the full and minute description filed in the Patent Office with his application and caveat in 1846, accompanied with the exhibits of completed and perfected fuses, made about the same time, establish, as we think, clearly his right as the first inventor.
Nor does the report of General Maynadier of his experiments in 1840, nor the testimony of Wade of his trials of fuses in 1843, in our opinion, show the contrary. So far as any similarity existed between the fuse used by Maynadier, in 1840, and those of the claimant, they were mere trials and imperfect experiments, that never resulted in a complete combined arrangement and invention. And from data and reports furnished of the trials and experiments alluded to by Major Wade, as made with similar fuses, in 1843, we are satisfied that he is mistaken in the dates, and that the fuses to which he refers were not used or made until 1846 or 1847, and when the claimant’s specifications were on file in the Patent Office. So far as the claim of the late Mr. Cyrus Alger, of South Boston, or his representatives, is concerned, there is no proof in the record that he, prior to 1846 or 1847, ever made any claim or pretension to the invention of any part of the fuse made and fully described before that tizne by the claimant. Mr. Alger, it is true, having a foundery at South Boston, at which projectiles for the government were made, like many other ingenious men, had his mind and thoughts turned to this subject. In the numerous trials and experiments made by him in connection with officers of the army and navy, he may and probably did use some of the devices and arrangements incorporated in the claimant’s invention. They may have been the suggestions of his own mind, or they may have been derived from the officers who had *30 made the experiments for the claimant. In any event, as we understand the proofs, these trials and experiments did not result in a complete and perfected invention until after the claimant had completed his inventions, described them fully, tested their efficiency, and filed his specifications and application for a patent.
If we are right in these facts, it necessarily follows that all the other and later claims and patents, given in evidence by the defendants, so far as they claim the same invention or parts of it, are the merest piracies upon and infringements of the claimant’s inventions.
That these inventions have been and are of great importance to the government is apparent. Several millions of these fuses were used during the war of the rebellion. Their importance has been greatly augmented by the introduction of rifled. cannon, and especially the impact or percussion fuses, by the use of which, in conical shells, their destructiveness is greatly enhanced by securing certain explosion after complete penetration of, or while imbedded in, the object at which it is fired. But their future use is also secured to the government without farther compensation; for, by the terms of the joint resolution, the damages we may award to him shall be not only for compensation for the use of his inventions and patents, as claimed up to the time of adjudication, but also for a full and entire transfer of his patents to the United States.
The fact that Hubbell is the original inventor of the fuse and percussion device, answers the question of whether he has a just and equitable right to compensation for the same. This just and equitable right to be paid for the use of his invention by the United States must be determined by those principles and considerations which obtain in ordinary cases for the use of inventions or infringement of patents. Were they private persons or parties who had used these fases in the same manner, would he have a claim to damages for that use? Would a bill in equity be sustained against them to enjoin the farther unauthorized use of the inventions, with an account for past use? Had he abandoned his inventions; had he in any way dedicated them to public use; or had he, by anything done or omitted on his part, debarred or precluded himself from a recovery for such infringement or use? So far as this record shows, all these questions must he answered in favor of *31 the claimant-. The fact being conceded or determined that he is the original inventor, and the use undisputed, his right in every respect to compensation is complete and perfect, and nothing has been shown from which we can infer that he had relinquished or released that right, that he had donated its use to the United States, or in anywise abandoned his invention.
The only remaining question is the amount of that compensation. Were this an action for infringement, or a bill to restrain its use, with an account of profits, the rule and measure of damages are well settled.
The actual loss sustained by the patentee is to be measured by the actual profits or benefits received by the infringer. And where this cannot be ascertained with exact and absolute certainty, it is, as in other cases, to be arrived at as nearly and approximately as the nature of the case will permit. Where the use of the invention is limited, as in the present instance, to a single party, the application of the rule is attended with no little difficulty and embarrassment. (See 3 Wall, 320.) We are, however, relieved from any such dilemma by the action of Congress in the joint resolution under which we are trying this action. They have prescribed a special rule for this case, and limited the amount that may be awarded under it. If the claimant be the original inventor of the shell and fuses, as claimed, and be justly and equitably entitled to compensation for them, the sum is not to exceed one hundred thousand dollars ; and his bringing suit and claiming the damages are to be deemed an acceptance of the sum awarded in full of all claim for the use of the inventions and the transfer of the patents. This limitation embraces the three patents as claimed. That for the shell having failed, we are limited to a proportional amount for the other two inventions. Or, in other words, we have no power to award any sum beyond the two-thirds of one hundred thousand dollars. The actual value of a reasonable royalty on the fuses used by the United States since the date of the claimant’s patents would, according to the opinion of professional and expert witnesses, measured by the usual rule, be much greater. Estimated upon that basis and upon the proofs, the actual loss to the claimant and the real gain to the defendants would be little, if at all, short of two hundred thousand dollars. But we are precluded from using this measure *32 of .damage for any other purpose than to ascertain the extent of his just and equitable right to compensation, within the rule and amount prescribed for us by Congress.
. And from all these considerations we are of opinion that, for the use of the ifases and the transfer of his patents' to the United States, the claimant should recover the sum of sixty-six thousand six hundred and sixty-six dollars and sixty-six and two-thirds cents, ($66,660 66|.) And for this sum, upon due consideration,.judgment is entered in his favor.
Peck, J., concurred in this opinion, except as to the amount of damages awarded, which he thought too large.